BEAUPIED, Plaintiff in Error, v. JENNINGS, Defendant in Error.

1. A. bequeathed a female slave with other property to his daughter B., and directed that all the property, real and personal, should be placed in the hands of C. for the use and benefit of said B. In a codicil to this will, duly executed, there was the following provision : " It is further my will that the negro girl Eliza, that I have bequeathed to my daughter B., shall have the privilege to choose some person to buy her in case she [shall] not be satisfied to live with my daughter B." The said slave communicated to the said C. her unwillingness to live with B. and made choice of a master, and C. sold her to the person thus chosen. *Held*, that the purchaser acquired a good title.

2. A privilege, conferred by will upon a slave, of choosing some person to buy her in case she should not be satisfied to live with the person to whom she had been bequeathed, is not, it seems, inconsistent with the legal idea of slavery.

*Error to St. Louis Court of Common Pleas.*

This was an action for the possession of a slave called Eliza and her three children. As evidence of title, the plaintiff, Louis Beaupied, adduced in evidence the will of John Howdeshell, deceased, the former owner of said slave Eliza. The will was dated October 27, 1849, and proved January 19, 1853. It contained the following clauses : " *Fourth.* I give and bequeath unto my daughter Ann my negro girl named Eliza at the valuation of four hundred and fifty dollars. *Ninth.* It is my will that all that portion of my estate, both real and personal, which may fall to Ann from my estate, shall be placed in the hands of George Hall for her special use and benefit, who consents at *my* request to act as guardian for my daughter Ann Howdeshell." He devised all his property to be divided equally among his children, the specific bequests to be estimated at the valuation stated in the will in determining each child's portion. The following codicil, dated December 31, 1852, was also introduced in evidence : " In addition to the foregoing will dated October 27, 1849, I make this codicil to the same ; that is to say, it is my will and wish so to change or alter that

portion of said will so as to give that portion of my estate which I have given or bequeathed unto my daughter Ann, who has since intermarried with Louis Beaupied, shall, in case she shall die before her husband, [*sic,*] the same to be equally divided between her sisters and brother. It is my further will that the negro girl Eliza, that I have bequeathed to my daughter Ann, shall have the privilege to choose some person to buy her in case she [shall] not be satisfied with my daughter Ann, and the proceeds of the sale of said negro girl Eliza shall go in the hands of George Hall, or his legal representatives, for the benefit of my daughter Ann. It is further my will that my daughter Ann shall receive the interest on her portion of my estate, the same to be paid to her annually by the said George Hall, or his legal representatives. In witness whereof," &c.

George Hall, a witness for plaintiff, testified on cross-examination that in a conversation had in the presence of Beaupied (plaintiff) and of himself, the negro Eliza stated that she would not live with Ann (the plaintiff's wife), and elected to choose a master ; that time was given her for that purpose ; and that afterwards she said she had elected John C. Jennings, the defendant, to buy her. This testimony was admitted against the objection of the plaintiff. It also appeared in evidence that the administrator of Howdeshell delivered the said Eliza to said George Hall as trustee under the will.

The court, of its own motion, gave the following instruction : " 1. If the jury believe from the evidence, that the slave Eliza was not satisfied to live with Ann Howdeshell, the wife of the plaintiff, and chose the defendant to be sold to him ; and if George Hall, named in the will of the testator John Howdeshell, sold the said Eliza to the defendant according to her said choice, and also sold her said children, and that the said slaves were sold and delivered to the defendant before the commencement of this suit, then the plaintiff is not entitled to recover, and the jury will find for the defendant."

The court refused the following instructions asked by the plaintiff: " 2. If the jury believe from the evidence that the slave Eliza mentioned in the petition is the same slave bequeathed to Ann, the wife of the plaintiff, by the will of her father John Howdeshell, which was read in evidence; that the plaintiff, at the time this suit was brought, was the husband of the said Ann, and that the defendant, at the time this suit was brought, was in the possession of said slave Eliza, then the plaintiff is entitled to recover as to said slave Eliza and her children born since the death of said testator. 3. If the jury believe from the evidence that the negro boy John Louis, mentioned in the petition, was in possession of the defendant when this suit was brought, is the child of the said slave Eliza, and was born after the death of the testator Howdeshell and before the sale of said slaves to the defendant, that the slave Eliza is the same bequeathed to Ann, the wife of the plaintiff, in the will read in evidence, and that the plaintiff, at the time of bringing this suit, was the husband of the said Ann, then they will find for plaintiff as to said boy John Louis."

·The defendant asked and the court refused the following : " The court instructs the jury that there is no evidence before them showing title or the right of possession in the plaintiff of the slaves in dispute at the commencement of this suit, and they will find for the defendant."

The plaintiff took a nonsuit with leave, &c.

*Hayden, Thomas & Sharp* and *Lackland,* for plaintiff in error.

I. The clause relied upon by defendant can not be regarded as an operative part of the will. It is from its nature and the manner of expression a mere wish or desire of the testator. A slave can not be the owner of property. Whatever he acquires a right to belongs to his master. (25 Mo. 44; 21 Ala. 274.) The right to choose a master is property as well as any beneficial right. A slave can not possess it. It is a right in derogation of the rights of the master. A slave

can acquire no rights in derogation of the power and authority of the master. The daughter of the testator was intended to be the real owner of the slave. The interest must have completely vested in her or her trustee for her. Choice implies liberty, freedom of will. How can a chattel possess this? In a criminal case, of course, for public purposes, the law is different; but in civil cases, admit that a slave possesses freedom of will and power of expressing that freedom in reference to his condition in one particular, and we must admit it in all. We can not say a slave may have so much power, not so much; this right, not that. The distinction must rest on quality, not quantity. If a slave may have choice, and power to exercise it uncontrolled by his master, in reference to that slave's condition, he is no longer a slave. He is either a freeman or an anomaly between a freeman and a slave. It is the settled policy of the law; and courts have uniformly refused to allow bequests, no matter how solemnly expressed and clearly proved, by which the liberty of choosing a power to determine some thing in reference to their own condition is bequeathed to slaves. The law recognizes only two conditions, freedom and slavery; no intermediate state; and will not allow a slave to possess a power inconsistent with his own condition and in derogation of his master's authority. (Peggy & Mary v. Legg, 6 Munf. 229; Wynn v. Carroll, 2 Gratt. 227; 9 Gratt. 539; Abercrombie's Ex'r v. Abercrombie, 27 Ala. 494; Graves v. Allen, 13 B. Monr. 190; Skrine v. Walker, 3 Rich. Eq. 269; 5 Maryl. 92.)

*Cline & Jamison,* for defendant in error.

NAPTON, Judge, delivered the opinion of the court.

The question in this case is not whether the privilege, conferred by Howdeshell's will upon his slave Eliza, of selecting another mistress in the event of her being dissatisfied with Mrs. Beaupied, could be enforced, but whether, after the trustee to whom the enforcement of this privilege was en-

trusted has complied with the directions of the will and sold the slave to the person she selected, the legatee can now maintain an action against the purchaser to recover back the slave and her children; and we are of opinion such action can not be maintained. This will is not to be understood as making an absolute bequest of a specific slave to the testator's daughter. The legal title to the slave is put in a trustee, and that trustee is authorized, and indeed required, in a certain contingency, to sell the slave and hold the proceeds for the benefit of the legatee. The trust has been complied with, and as the trustee had, beyond doubt, the power of sale, the purchaser acquired a good title.

There is nothing in the institution of slavery as understood in the slaveholding states inconsistent with the concession of a privilege of this kind to a slave. The practice is very common and commendable, and the courts will respect the humanity and kindness by which such arrangements are dictated, and will assuredly not interfere with them when voluntarily carried out. Slaves are not mere chattels, nor do our laws or usages so regard them; nor, as human beings, are they regarded as incapable of volition or choice; and the writers, if there be any, who have so represented, are treating of it as an abstraction, and probably know nothing about it practically. The relation between master and slave is regulated by a variety of laws, all having in view to enforce their reciprocal rights and duties, obedience and submission on the one hand, and protection and kindness on the other; and although these rights and duties, to some extent, like those of parent and child, can, from their very nature, be enforced but imperfectly, yet their existence and validity is recognized, and any deviation from them is punished in the same way and to the same extent as a dereliction of other moral obligations.

The instructions given by the court were correct, and the judgment will therefore be affirmed. The other judges concur.

SCOTT, Judge. So far as the opinion in this case sanctions the doctrine that a trustee, if directed by the terms of a trust, may, as against a *cestui que trust*, apply the trust property in a way contrary to law, I do not concur in it. I am of the opinion the judgment should be affirmed.